UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| TR INTERNATIONAL TRADING COMPANY ) <br> ) <br> PLAINTIFF, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES, ) <br> ) <br> DEFENDANT. ) <br> ) | Court No. 19-00217 |

# COMPLAINT

Plaintiff TR International Trading Company ("TRI"), being the importer of record in this matter, by its undersigned attorneys, brings this action and alleges as follows:

## CAUSE OF ACTION

1. TRI brings this action to contest the denial by U.S. Customs and Border Protection ("CBP"), pursuant to section 515 of the Tariff Act of 1930, *as amended*, 19 U.S.C. § 1515, of TRI's timely filed protest challenging (a) CBP's peremptory and arbitrary assessment of Normal Trade Relations duties and additional duties against TRI's entry of USP Kosher citric acid anhydrous that was produced in and imported from India, as though it were from the People's Republic of China ("China") under claimed authority of the Antidumping and Countervailing Duty Orders ("the Orders") issued by the United States Department of Commerce ("Commerce") against *Citric Acid from China*;[1] and (b)

---

[1] *Citric Acid and Certain Citrate Salts from Canada and the People's Republic of China: Antidumping Duty Orders*, 74 Fed. Reg. 25703 (Dept. Commerce May 29, 2009); *Citric Acid and Certain Citrate Salts from the People's Republic of China: Notice of Countervailing Duty*

CBP's denial of TRI's claim for duty free treatment of this entry as a qualifying product of India under the Generalized System of Preferences ("GSP").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(a).

3. This Court and the U.S. Court of Appeals for the Federal Circuit have held that this Court has jurisdiction of the issues raised in this action pursuant to 28 U.S.C. § 1581(a). *See TR International Trading Company v. United States et al.*, 433 F. Supp. 3d 1329 (Ct. Int'l Trade 2020, *aff'd*, 4 F. 4th 1363 (Fed. Cir. 2021).

4. TRI paid all liquidated duties, taxes and charges prior to commencing this action.

5. TRI exhausted all administrative protest remedies available to it prior to commencing this action.

## STANDING

6. TRI is a veteran-owned and operated chemical importer and distributor headquartered in Seattle, Washington.  It is the real party in interest, as it is the Importer of Record of the merchandise subject to this action, and it paid all liquidated duties, taxes, interest, and charges prior to the commencement of this action.

## STATEMENT OF FACTS

**TRI's Entry of Citric Acid Anhydrous from India**

7. The merchandise subject to this action is Daffodil® brand USP Kosher grade citric acid anhydrous.

---

*Order*, 74 Fed. Reg. 25705 (Dept. Commerce May 29, 2009) ("AD/CVD Orders").  Complaint Exhibit 1.

8. Posy Pharmachem Pvt. Ltd. ("Posy") is a manufacturer of Active Pharmaceutical Ingredient (API) excipient and food additives located in India.

9. Posy is the manufacturer of the subject merchandise.

10. Posy sold the subject merchandise to TRI for export to the United States.

11. On November 15, 2017, TRI filed with CBP at the port of Houston (Port Code 5301) one entry of Daffodil® brand USP Kosher grade citric acid anhydrous purchased from Posy. Entry Number 799-3016407-1.

12. The entry claimed classification and eligibility for GSP treatment as "citric acid" described under subheading A2918.14.0000 of the Harmonized Tariff Schedule of the United States ("HTSUS").

13. Posy's commercial invoice described the imported merchandise at issue as "Citric Acid Anhydrous USP{United States Pharmacopeia}/Kosher Fine Granular" and identified the fine mesh size.

14. Among the available certifications attesting to India as the origin of the Citric Acid Anhydrous USP/Kosher Fine Granular subject to the entry were a Certificate of Origin issued by the Gujarat Chamber of Commerce & Industry and a "Star K Kosher" Certification issued by a Baltimore based non-profit organization following an on-site inspection of Posy's production facility. Complaint Exhibit 2.

15. The entry was filed with CBP as a type 01 "consumption" entry, not as a type 03 "consumption – antidumping (AD)/countervailing duty (CVD)" entry.

16. TRI did not deposit antidumping or countervailing duties with the entry.

17. CBP did not reject the entry as filed.

**CBP's Request for Information and TRI's Response**

18. On February 1, 2018, Customs Import Specialist Wagner at the Port of Los Angeles issued a Request for Information (" Los Angeles RFI") on Customs Form 28 seeking value, production, and process quality information concerning 17 entries of Daffodil® brand citric acid anhydrous that TRI purchased from Posy and filed at various ports, including Entry Number 799-3016407-1.

19. On March 19, 2018, TRI responded to the Los Angeles RFI, through its counsel Neville Peterson LLP, with a detailed 987-page submission. This March 19, 2018 submission documented (1) Posy's purchase and receipt of raw material from suppliers in India, that raw material being citric acid monohydrate expressly designated as being "not for medicinal use," (2) Posy's batch-by-batch processing in India of this raw material into citric acid anhydrous, (3) Posy's costs of converting this citric acid monohydrate into citric acid anhydrous, and (4) Posy's sale and exportation of the citric acid anhydrous to TRI in the United States. This submission further included images of Posy's production facility and equipment in India.

20. TRI's March 19, 2018 response also included a peer-reviewed scientific article that described the thermodynamic chemical reaction by which the molecular bonds of citric acid monohydrate, a crystalline product with an orthombic molecular structure, are broken and its molecules are reformed and substantially transformed into a separate and distinct crystalline chemical product having a different molecular structure, and known as citric acid anhydrous. *See* LaFontaine, A., Sanselme, M., Cartigny, Y., Cardinael, P., Coquerel, G., *Characterization of the transition between the monohydrate and the*

*anhydrous citric acid*, Journal of Thermal Analysis Calorimetry, Vol. 112, Issue 1, 307 (April 2013). Complaint Exhibit 3.

21. Through counsel, TRI supplemented its March 19, 2018 response on March 22, 2018 by submitting to CBP 496 pages of additional documentation that had not been available on March 19, 2018.

22. The production documentation submitted in response to the Los Angeles RFI established that Posy's direct costs in India exceeded 35 percent of the appraised value of the subject merchandise.

23. The country of origin of the non-medical grade citric acid monohydrate that Posy purchased in India from Indian suppliers, and which it consumed in India to manufacture USP Kosher citric acid anhydrous, is not identified in the commercial documentation from Posy's suppliers. It is unknown.

24. TRI's response to the RFI explained that citric acid monohydrate is a chemical having the molecular formula $C_6H_{10}O_8$. It has a helical crystalline structure. It is a specific chemically-defined compound assigned Chemical Abstract Service Registry Number ("CAS Number") 5949-29-1.

25. TRI's response to the RFI further explained that citric acid anhydrous is a chemically-defined compound separate from citric acid monohydrate, having a different molecular formula, $C_6H_8O_7$. It has a layered crystalline structure. Citric acid anhydrous is assigned CAS number 77-92-9.

26. As a result of these differences in molecular and crystalline structure, citric acid monohydrate and citric acid anhydrous have the following differences in physical

properties: different molecular weights, different melting points, different boiling points, different flash points, different PH, among other differences.

27. The citric acid monohydrate raw material purchased by Posy and the citric acid anhydrous imported by TRI have different commercial uses. Among other things, the designations "USP" and "Kosher" define the citric acid anhydrous imported by TRI as certified suitable for use in the pharmaceutical and food industries. In contrast, the citric acid monohydrate used by Posy as a raw material was not suitable for such use.

28. The documentation submitted to CBP in response to the Los Angeles RFI demonstrated that the crystalline citric acid anhydrous produced by Posy had a different name, character and use than the citric acid monohydrate from which it was produced.

### CBP's Mishandling of TRI's Response and Consequent Actions

29. According to CBP's website listing of Official Notices of Extension, Suspension and Liquidation, which is the best evidence of its contents, on May 16, 2018, CBP extended liquidation of TRI's entries of citric acid anhydrous from India, including Entry Number 799-3016407-1, on its own initiative. CBP's stated basis for the extension of liquidation was "Customs Ext." CBP's webpage does not identify any other reason for the extension of liquidation, and TRI received no other notice.

30. After Import Specialist Wagner in Los Angeles failed to respond to multiple voice mail messages left by counsel for TRI in a persistent effort to learn the status of CBP's review of TRI's response to the RFI, counsel emailed Mr. Wagner on October 2, 2018. This email prompted a flurry of activity by CBP on the following day.

31. On October 3, 2018, Senior Import Specialist Kreidermacher-Carter with CBP's Pharmaceuticals, Health & Chemicals Center for Excellence and Expertise ("PCEE"),

replied to counsel's October 2 email, stating that review of TRI's submission had been transferred to the PCEE. Ms. Kreidermacher-Carter further stated that the PCEE understood that TRI had never responded to CBP's February 1, 2018 RFI.

32. Also on October 3, 2018, Mr. Wagner in Los Angeles informed TRI's counsel that he had forwarded all 1500 pages of TRI's RFI responses to the PCEE. Mr. Wagner's statement not only contradicted Ms. Kreidermacher-Carter's statement, it established that CBP had mishandled TRI's responses to the RFI, losing them in the attempted transfer to the PCEE.

33. Also on October 3, 2018, Ms. Kreidermacher-Carter advised TRI's counsel that the PCEE had issued a Notice of Action Taken on September 21, 2018 which had requested a response from TRI within 20 days. At this time, she provided a copy to counsel. Prior to this act by Ms. Kreidermacher-Carter, TRI never received this September 21, 2018 Notice, either directly or through its customs broker and was thereby precluded from submitting a timely response. Confirming CBP's failure to provide notice to TRI, Ms. Kreidermacher-Carter also advised that the PCEE had independently confirmed that TRI's customs broker had no record of having received the September 21, 2018 Notice of Action Taken.

34. Also on October 3, 2018, the PCEE advised TRI's counsel that CBP had scheduled liquidations of TRI's entries, including Entry Number 799-3016407-1.

35. Also on October 3, 2018, TRI's counsel provided evidence that, in fact, TRI had submitted timely responses to CBP's February RFI, and he requested that the scheduled liquidations be unset in light of this evidence.

36. Also on October 3, 2018, Supervisory Import Specialist Saheed Muhammed with the PCEE advised TRI's counsel that the scheduled liquidations had been unset. According to CBP's website listing Official Notices of Extension, Suspension and Liquidation, CBP suspended liquidation of TRI's entries, including Entry Number 799-3016407-1, on that date. The stated basis for suspension of liquidation was "Other 1 Suspend." CBP's webpage did not identify the legal basis for the suspension of liquidation, nor did TRI receive notice of the legal basis for the suspension of liquidation by any means.

37. CBP's October 3, 2018 decision to suspend TRI's RFI entries as "Other 1 Suspend" was incompatible with the CEE's September 20, 2018 Notice of Action Taken asserting applicability of AD/CVD under the Orders. CBP's action to unset liquidation in the face of its own loss of -- and consequent failure to review -- TRI's RFI response and in concert with its decision to suspend TRI's RFI entries as "Other 01 Suspend" acted as a *de facto* cancellation of the September 20, 2021 Notice of Action Taken. Consistent with such *de facto* cancellation of the September 20, 2021 Notice of Action Taken, CBP did not demand that TRI deposit AD/CVD under the Orders.

38. On October 4, 2018, TRI's counsel sent a new set of hard copies of TRI's responses to the February RFI directly to the PCEE.

**CBP's Groundless Conclusion that the Citric Acid Imported by TRI Was Subject to the *China* Orders**

39. Also on October 3, 2018, Mr. Muhammed further informed TRI's counsel that the PCEE would solicit the opinion of the Customs Laboratory concerning Posy's processing of the citric acid anhydrous in India. In that context, Mr. Muhammed requested a copy of Posy's process flow diagram for review by the Customs Laboratory. TRI's counsel immediately complied with this request by emailing (1) the requested process flow

diagram, accompanied by (2) the peer-reviewed paper from the Journal of Thermal Analysis and Calorimetry, *Characterization of the transition between the monohydrate and the anhydrous citric acid*, and (3) to demonstrate that Posy had in fact performed that process, (a) an exemplar batch manufacturing record, and (b) the corresponding final batch analysis record.

40. Nearly three weeks later, on October 24, 2018, Mr. Muhammed advised TRI's counsel that the Customs Laboratory had concluded that Posy's USP Kosher citric acid anhydrous was not substantially transformed in India and therefore was not a product of India.  Mr. Muhammed did not, however, state that CBP had identified China or any other country as the country of origin of TRI's citric acid anhydrous imported from India.  Mr. Muhammed further advised that "all the entries previously identified {in the RFI} would be liquidated with the applicable consumption, anti-dumping and countervailing duties accordingly."  Mr. Muhammed did not identify any "anti-dumping and countervailing duties" that were "applicable" to TRI's entries, including Entry Number 799-3016407-1.

41. At that time, Mr. Muhammed did not demand a deposit of AD/CVD on the entries covered by the RFI, nor did the CEE issue a Notice of Action proposing an assessment of AD/CVD under the *China* Orders.  Mr. Muhammed did not advise TRI's counsel of any facts known to CBP that would provide a reason for TRI to seek a scope ruling from Commerce.

42. Mr. Muhammed declined to provide a copy of the Customs Laboratory report to TRI's counsel, stating that TRI's counsel would need to request it directly from the Director of Customs New York Laboratory.

43. TRI's counsel requested a copy of the Customs New York Laboratory report on October 31, 2018.

44. Also on October 31, 2018, TRI's counsel filed a request for extension of liquidation to afford TRI sufficient time to challenge the Customs Laboratory's GSP-claim-related conclusion that no substantial transformation occurred as a result of the production of citric acid anhydrous in India. CBP ignored this request for extension of liquidation, and it did not respond.

45. On November 1, 2018, CBP changed the basis for suspension of liquidation of the entry from "Other 01" to "AD/CVD Suspend." Although during the relevant period Commerce had issued AD/CVD orders against citric acid from five countries (Belgium, Canada, China, Columbia, and Thailand), CBP's Notice of AD/CVD suspension did not identify a country of origin for TRI's entries, nor did it direct TRI to deposit estimated AD/CVD. CBP did not issue a Notice of Action proposed to TRI providing notice of any facts supporting assessment of AD/CVD or identifying which of the countries subject to AD/CVD orders CBP considered to be the basis for the suspension. Consequently, TRI's counsel had no actual knowledge that CBP had changed in the basis for the suspension and reason to consult CBP's website for notice that CBP had changed the basis for the suspension for liquidation to "AD/CVD suspend."

46. By email dated November 6, 2018, the Director of Customs New York Laboratory sent to TRI's counsel a redacted copy of its report concerning Posy's USP Kosher citric acid anhydrous from India. The redactions concerned the identity of the requester, the lab analyst, and the approving official. Complaint Exhibit 4.

47. The Customs Laboratory report failed in numerous respects to support its conclusion that Posy's USP Kosher citric acid anhydrous was not substantially transformed in India. First, the Customs Laboratory did not perform any laboratory tests on a sample of TRI's citric acid anhydrous because CBP did not request a sample. Second, the Laboratory did not acknowledge that the raw material consumed by Posy's production process was crystalline non-medical grade citric acid monohydrate that was sourced from suppliers in India. Third, the Laboratory incorrectly described Posy's production process as merely removing "solvate water," a description fatally contradicted by the important facts that (a) citric acid monohydrate is neither liquid nor wet; (b) no solvate water exists in crystalline citric acid monohydrate, and (c) the production of citric acid anhydrous from citric acid monohydrate employs a thermodynamic chemical reaction to break the atomic bonds of the citric acid monohydrate molecule to separate a water molecule, which is driven off by heat, as a result of which citric acid anhydrous forms as a new solid crystalline material with a different crystal structure. Fourth, the Laboratory's erroneous description of Posy's production process resulted in the incorrect conclusion that citric acid anhydrous is produced simply by "drying" citric acid monohydrate.

48. Moreover, the "Information Reque[s]ted" by the PCEE was "Does the . . . conversion of citric acid monohydrate to citric acid anhydrous {described in the peer reviewed journal article submitted by TRI} constitute a substantial transf{ormation}?" As such, the "information requested" by the PCEE required the Customs Laboratory to reach a legal conclusion rather than conduct any chemical or other scientific analyses. Complaint Exhibit 4.

49. Notably, the Laboratory's report did not identify a country of origin for the non-medical grade citric acid monohydrate that Posy purchased from Indian suppliers. Nor did the Laboratory's report identify China as the country of origin of the citric acid anhydrous imported by TRI.

50. To the contrary, in the "Origin" data field, the Customs Laboratory report identifies the country code for India, "IN," as the origin.

51. In reaching a legal conclusion that producing citric acid anhydrous from citric acid monohydrate does not result in a substantial transformation, the Laboratory ignored the peer-reviewed scientific journal article discussing the chemical reaction required to change citric acid monohydrate into citric acid anhydrous. Instead, the Laboratory merely "noted" five CBP rulings: H276411, H265712, H113256, 558852, 563014. Reflecting the Customs Laboratory's fundamental failure to recognize that a thermochemical reaction is required to produce citric acid anhydrous from citric acid monohydrate, only one of the rulings "noted" by the Laboratory involved a chemical reaction. That ruling, *CHRL 563014* (October 20, 2004), contradicted the Laboratory's legal conclusion in that it found a substantial transformation to have taken place when one chemical compound having its own CAS number was reacted, creating a different chemical compound having its own CAS number as well as different physical properties and uses.

52. None of the four other rulings "noted" by the Laboratory, in which CBP did not find substantial transformation, involved a chemical reaction. *See CHRL H276411* (February 28, 2017) (purifying and blending reclaimed gases); (*CHRL 558852* (December 21, 1994) (using a molecular sieve to remove water to produce anhydrous ethyl alcohol);

*CHRL H265712* (September 18, 2015) (purification of a crude substance); *CHRL H113256* (December 27, 2010 ) (processing crude pigment into finished pigment).

**Liquidation and Protest**

53. On December 12, 2018, TRI received through its customs broker a Notice of Action Taken issued on that date stating that TRI's entries of citric acid anhydrous from India, including Entry Number 799-3016407-1, were in the liquidation process.  The Notice of Action stated that the entries would be assessed antidumping duties at the rate of 158.87 percent and countervailing duties at the rate of 8.14 percent pursuant to the *China* Orders.  Complaint Exhibit 5.

54. On information and belief, at no time did CBP officials consult with the U.S. Department of Commerce International Trade Administration ("ITA") concerning the scope of the *China* Orders or whether TRI's entries of citric acid anhydrous from India, including Entry Number 799-3016407-1, were subject to those Orders.

55. On information and belief, CBP officials assessed AD/CVD against TRI's entry of citric acid anhydrous from India based solely on the terms of the *China* Orders.

56. Neither CBP's laboratory nor other offices within CBP have authority to determine that citric acid anhydrous produced in India from citric acid monohydrate of unknown origin is from China for purposes of the *China* Orders.

57. CBP issued its December 12, 2018 Notice of Action Taken after it liquidated TRI's RFI entries on December 7, 2018, more than one year after the November 15, 2017 date of entry of Entry Number 799-3016407-1.

58. CBP liquidated the entry of the subject merchandise under HTSUS Subheading 2918.14.0000, denying GSP eligibility and assessing Normal Trade Relations duties at

the rate of 6 percent *ad valorem* and assessing antidumping duties at the rate of 158.87 percent and countervailing duties at the rate of 8.14 percent pursuant to the *China Orders*.

59. CBP appraised the subject merchandise at the value declared on the subject entry.

60. TRI timely protested CBP's liquidation of the entries, expressly including Entry Number 799-3016407-1, within 180 days of liquidation, on June 5, 2019.  Protest Number 5301-19-100903 concerned Entry Number 799-3016407-1.

61. In accordance with 19 U.S.C. § 1515(b) and 19 C.F.R. § 174.22, TRI requested by certified U.S. mail accelerated disposition of Protest Number 5301-19-100903 on June 6, 2019.

62. In accordance with 19 U.S.C. § 1515(b) and 19 C.F.R. § 174.22(d), CBP is deemed to have denied Protest Number 5301-19-100903, effective July 6, 2019, through its failure to issue a decision on TRI's protest within 30 days following TRI's request for accelerated disposition.

63. TRI timely filed its Summons in this matter on December 23, 2019, within 180 days of the deemed denial of its protest.

## COUNT I

**TRI's Citric Acid Anhydrous from India Is Not Subject to the  
*Citric Acid from China* AD/CVD Orders**

64. Paragraphs 1 through 63 are restated and incorporated by reference as though fully set forth herein.

65. The subject merchandise is not subject to assessment of antidumping duties and countervailing duties pursuant to the *China* Orders.

66. By their express terms, the *China* Orders do not apply to citric acid anhydrous produced in India from citric acid monohydrate of unknown origin.

67. Commerce has not issued any scope ruling that holds that USP Kosher citric acid anhydrous manufactured in India from citric acid monohydrate of unknown origin is within the scope of the *China* Orders.

68. Commerce has not conducted a circumvention proceeding finding that USP Kosher citric acid anhydrous manufactured in India from citric acid monohydrate of unknown origin is circumventing the *China* Orders.

69. CBP cited Commerce Messages 8213307 and 8211318 as bases for its Notice of Action Taken.  These Messages comprised automatic liquidation instructions for lifting suspension of liquidation of entries of citric acid from China made during the period covering TRI's entries. Complaint Exhibits 6 and 7.  Those liquidation instructions do not direct CBP to liquidate entries of citric acid anhydrous manufactured in India from citric acid monohydrate of unknown origin, assessing antidumping and countervailing duties pursuant to the *China* Orders.

70. CBP's Laboratory report concluded only that manufacturing citric acid anhydrous from citric acid monohydrate did not accomplish a substantial transformation.  It did not identify a country of origin for the citric acid monohydrate from which Posy produced the subject citric acid anhydrous.

71. CBP's Notice of Action Taken cited no evidence that the citric acid monohydrate from which Posy produced the subject citric acid anhydrous originated in China.

72. CBP never demanded that TRI deposit antidumping and countervailing duties on its RFI entries pursuant to any AD/CVD order in effect against any country.

73. CBP's assessment of antidumping and countervailing duties against Entry Number 799-3016407-1 is unlawful in that it lacks any evidentiary or legal basis to support CBP's determination that the USP Kosher citric acid anhydrous which TRI imported from India is a product of China subject to the *China* Orders.

## COUNT II

### The Customs Laboratory's Legal Interpretation Exceeded Its Authority and Was Without Basis in Fact

74. Paragraphs 1 through 73 are restated and incorporated by reference as though fully set forth herein.

75. The thermodynamic chemical reaction through which Posy processed citric acid monohydrate of unknown origin into citric acid anhydrous in India substantially transforms the citric acid monohydrate into a new and different product that originates in India.

76. Citric acid monohydrate is not a liquid, nor is it wet. It is a crystalline solid that contains a chemically-bound water molecule.

77. The application of heat to break molecular bonds constitutes a thermodynamic reaction.

78. A thermodynamic reaction is a chemical reaction.

79. CBP's administrative precedent has consistently found that a chemical reaction results in a substantial transformation of the starting material into a new and different product.

80. Citric acid anhydrous has a new and different name, character and use from citric acid monohydrate.

81. A Customs Laboratory report is not an interpretive ruling of CBP. It is not entitled to any deference by this Court.

82. The qualifications and authority of the Customs Laboratory that issued the report on which CBP relied to assess antidumping and countervailing duties against Entry Number 799-3016407-1 are limited to making determinations of scientific fact.

83. The Customs Laboratory did not have a sample of the subject merchandise and performed no scientific tests.

84. The Customs Laboratory found no scientific facts concerning the subject merchandise.

85. As a matter of customs law, the Customs Laboratory does not have authority to make a legal determination as to whether any particular production process constitutes a substantial transformation.

86. The Customs Laboratory's conclusion that manufacturing citric acid anhydrous from citric acid monohydrate did not accomplish a substantial transformation was without basis in fact and was contradicted by the peer reviewed article that TRI submitted in response to the RFI, *Characterization of the transition between the monohydrate and the anhydrous citric acid*, which describes both the chemical reaction required to transform citric acid monohydrate into citric acid anhydrous and the resulting changes in molecular structure.

87. The Customs Laboratory misinterpreted the five customs rulings on which it relied, including the ruling that contradicted its conclusion that manufacturing citric acid anhydrous from citric acid monohydrate did not accomplish a substantial transformation.

88. CBP's reliance on a Customs Laboratory report that lacked any evidentiary or legal basis renders its assessment of antidumping and countervailing duties against Entry Number 799-3016407-1 was unreasonable and unlawful.

## COUNT III

### CBP Failed to Follow the Liquidation Instructions Issued by Commerce

89. Paragraphs 1 through 88 are restated and incorporated by reference as though fully set forth herein.

90. CBP suspended liquidation of the subject entry after Commerce had issued liquidation instructions to CBP, an action that terminated CBP's authority to suspend liquidation of the subject entry pursuant to the *China* Orders.

91. CBP acted without legal authority when it suspended liquidation of the subject entry as "Other Suspend 01" and when, after Commerce had directed CBP to lift suspension of liquidation of entries made during the relevant period of time pursuant to the *China* Orders, CBP subsequently changed its claimed legal basis for suspension to "AD/CVD Suspend".

92. When liquidating TRI's entries of citric acid from India, CBP failed to implement Commerce's liquidation instructions. CBP's liquidation of TRI's entry inconsistently with Commerce's instructions was contrary to law.

## COUNT IV

### TRI's Citric Acid Anhydrous Is Eligible for Duty-Free Treatment Pursuant to GSP As a Product of India

93. Paragraphs 1 through 92 are restated and incorporated by reference as though fully set forth herein.

94. The citric acid anhydrous that is the subject of this action is wholly the growth or produce of India, or it is a substantially transformed product of India for purposes of the GSP.

95. The sum of the cost of beneficiary country materials, plus the direct cost of processing in the beneficiary country, India, equaled at least 35 percent of the appraised value of the subject merchandise.

96. The subject merchandise was imported into the United States directly from India, without entering the commerce of any other country.

97. The imported merchandise was classified in liquidation under HTSUS subheading 2918.14.0000, which at the time of entry was designated as eligible for duty-free treatment pursuant to GSP.

98. At the time of entry, India was a "designated beneficiary country" for purposes of GSP.

99. The subject merchandise qualifies for duty free treatment pursuant to GSP.

## PRAYER FOR RELIEF

WHEREFORE, TRI respectfully requests the Court to enter judgment in its favor, directing Customs to reliquidate Entry Number 799-3016407-1 without antidumping and

countervailing duties, to refund such duties paid with interest as provided by law, and to grant TRI such additional relief as the Court may deem appropriate.

                                      Respectfully Submitted,

                                      /s/ *Michael K. Tomenga*

                                      NEVILLE PETERSON LLP
                                      Counsel for Plaintiff
                                      1400 16th Street, N.W., Suite 350
                                      Washington DC 20036
                                      (202) 776-1148
                                      (202) 861-2924 (Fax)

                        By:    John M. Peterson
                                      Michael K. Tomenga
                                      Lawrence J. Bogard

December 22, 2021